Robert M. Moye (IL. Bar No. 6225688)
Email: moyer@sec.gov
Jennifer Peltz (IL Bar. No. 620848)
Email: peltzj@sec.gov
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390 |
Facsimile: (312) 353-7398

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>vs.<br><br>CONRAD A. COGGESHALL,<br><br>  Defendant,<br>and<br><br>BUSINESS OWNERS TAX RELIEF, LLC,<br><br>  Relief Defendant | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Securities and Exchange Commission ("the SEC") alleges:

## SUMMARY

1. This case arises out of a fraudulent scheme by Defendant Conrad A. Coggeshall, acting as a financial advisor, to deprive several elderly investors of their retirement savings. Between April, 2017 and May 2018, Coggeshall raised $700,000 from four elderly investors, including three married couples.

COMPLAINT AND JURY DEMAND - 1

2. Coggeshall told these investors that: (1) they were investing in a company called "BOTR, LLC," which was a successful mergers and acquisitions firm based in New York; (2) their investments were safe and insured; and (3) they would receive periodic interest payments at a high, fixed rate. However, the investors' funds were not safe, insured, or used for their stated purpose.

3. Instead, Coggeshall deposited the investors' funds into brokerage and bank accounts in the name of Business Owners Tax Relief, LLC ("BOTR"), an Arizona company owned by Coggeshall which does not engage in mergers or acquisitions. Coggeshall then used the investors' funds to trade securities, incurring significant losses, and to pay personal expenses.

4. Coggeshall did make some payments to his investors, which he called "interest" payments from the New York acquisitions firm. However, this was a lie.

5. By reason of his conduct, Coggeshall violated Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

6. The SEC seeks an order permanently enjoining Coggeshall from future violations of the antifraud provisions of the Securities Act and the Exchange Act, and requiring him to pay disgorgement plus prejudgment interest and a significant civil penalty. The SEC also seeks an order holding BOTR liable for the illegal transfers of funds it received, and requiring it to return any investor funds it still holds.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8. Venue is proper in this Court pursuant Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because the

COMPLAINT AND JURY DEMAND - 2

Defendants reside in this District and many of the acts, practices and courses of conduct constituting the violations alleged in this Complaint occurred within this district.

## THE DEFENDANT AND RELIEF DEFENDANT

9. Defendant **Conrad A. Coggeshall,** age 52, lives in Scottsdale, Arizona. From June 2015 until January 2018, he was an investment adviser and registered representative of a nationally-recognized broker-dealer with its headquarters in Green Bay, Wisconsin. Before then, Coggeshall was an investment adviser representative and a registered representative of several other firms.

10. Relief Defendant **Business Owners Tax Relief, LLC,** is an Arizona LLC that Coggeshall formed in 2014. Coggeshall is its sole member.

## ALLEGATIONS OF FACT

A. Coggeshall's Investors

11. Over a period of more than ten years, Coggeshall developed long-standing relationships with several elderly investors, including married couples, who lived or had relatives living in Arizona. Coggeshall typically met these investors through community events and retirement planning seminars offered by one of Coggeshall's former employers.

12. Coggeshall gained these investors' trust by, among other things, providing advice about the investors' retirement planning and finances. He recommended the purchase of annuities to certain of his customers who wanted a reliable revenue stream during retirement. He also helped his customers invest in accounts associated with the broker-dealers with whom he was affiliated.

13. In addition, Coggeshall recommended that several of his brokerage customers invest in two private companies which were not associated with accounts at registered broker-dealers. Beginning in 2011, several of Coggeshall's brokerage customers made investments in those two private companies, which totaled hundreds of thousands of dollars.

COMPLAINT AND JURY DEMAND - 3

14. Those private investments later resulted in very significant losses. However, each of these investors continued to trust Coggeshall and relied upon his financial advice.

B. <u>Coggeshall Recommended Investments in BOTR</u>

15. Between April 2017 and May 2018, Coggeshall encouraged four elderly investors, including married couples, to make additional investments in another private company he called BOTR.

16. Prior to and following their initial investments, Coggeshall made one or more of the following representations to each investor:

    (a) BOTR was a successful mergers and acquisitions firm based in New York;
    (b) Coggeshall had been working with BOTR for years;
    (c) BOTR was a legitimate and trustworthy company;
    (d) the investment was safe because investor funds would be placed in an escrow account and/or were protected by insurance; and
    (e) investors in BOTR would receive periodic payments at a fixed interest rate.

17. These four investors wrote a number of checks to BOTR, totaling $700,000. On some of these checks, the investors wrote that they were for investments or "M&A."

18. Coggeshall accepted the funds from these investors, and eventually handed or mailed each of the investors at least one unsigned "Document of receipt." The exact wording of these documents differed slightly, but each Document of receipt stated:

    (a) the investor's funds were placed in "account 2169 of BOTR LLC", a "merger company trust account" on behalf of the investor; and
    (b) the principal investment of funds was "fully insured".

19. In addition, most of the Documents of receipts provided to investors stated:

    (a) "The funds are not at risk to any loss due to investment";
    (b) the investor would receive periodic interest payments with a stated annual interest rate between 11%-14%;

COMPLAINT AND JURY DEMAND - 4

(c) "Liquidation is available upon request. Liquidation can take as long as 0 to 9 months depending on request date"; and

(d) all correspondence was to be conducted through Coggeshall.

20. The Documents of receipt all concluded with the typewritten name "Carrie Brax," who was identified as BOTR's "Managing Director." However, there was no address, telephone number or email address which investors could use to contact BOTR.

21. Coggeshall explained this fact to certain investors by stating that BOTR was extremely busy with its M & A work, and the amounts of money it normally handled were very large. Accordingly, BOTR did not wish to create account statements and wanted Coggeshall to correspond on its behalf directly with the investors.

22. Subsequently, when the investors pressed Coggeshall for the names of other contacts at BOTR, he claimed that he had a friend named "White Martindale" who worked there. However, Coggeshall never provided his investors with contact information for "White Martindale" or anyone at BOTR.

C.   <u>Coggeshall Obtained Additional Funds from an Elderly Customer</u>

23. In addition to the amounts described above, Coggeshall also obtained nearly $600,000 from James Toensing, a resident of Tempe, Arizona, who was one of Coggeshall's brokerage customers.

24. Toensing was an unmarried, childless, 86-year-old man who suffered from dementia. He died in January 2019.

25. In June 2018, Coggeshall helped Toensing obtain a large, lump-sum cash distribution from a fixed annuity owned by Toensing's Trust, for which Coggeshall was the agent. Almost all of the lump-sum cash distribution ultimately was deposited into the same BOTR account as the majority of the four other investors' funds.

26. In October 2018, Toensing purportedly gave Coggeshall a financial power of attorney over his assets, executed a new will naming Coggeshall as the executor of his estate and naming Coggeshall the primary beneficiary. Further, Toensing purportedly executed a new Trust naming Coggeshall as the trustee and beneficiary.

COMPLAINT AND JURY DEMAND - 5

27.     These same documents also purport to forgive debts which Coggeshall and others may have owed to Toensing.

28.     At various times since Toensing's death, Coggeshall has been seen living in Toensing's home and driving Toensing's car. Coggeshall also has attempted to obtain the remaining value of the annuity owned by Toensing's Trust.

### D.     Coggeshall Made False Statements and Misused Investor Funds

29.     Coggeshall did not invest any funds on behalf of the four investors, in a New York-based mergers and acquisitions firm called BOTR. No such firm exists.

30.     Instead, Coggeshall deposited all of the investor funds into brokerage and bank accounts which he had opened in the name of BOTR, an Arizona company that Coggeshall owns. This company has never conducted any mergers and acquisitions business.

31.     Coggeshall deposited the majority of the funds from the investors and Toensing into BOTR's brokerage account and used those funds to buy and sell securities. Coggeshall never told any of the BOTR investors that he would use their funds to trade securities.

32.     BOTR's brokerage account was entirely funded by the money Coggeshall obtained from investors and Toensing, from the cash flows derived from those funds and the securities purchased with those funds.

33.     Coggeshall was unsuccessful at trading securities in the BOTR brokerage account and incurred approximately $945,000 in trading losses.

34.     BOTR's bank account was funded almost exclusively by money from investors, by transfers from BOTR's brokerage account, and – after Toensing's death -- by transfers from Toensing's Trust.

35.     Coggeshall made a few payments to BOTR's investors, which totaled $104,223.50. These payments typically were made by cashier's check from the branch of a national bank in Scottsdale, Arizona.

COMPLAINT AND JURY DEMAND - 6

36. Coggeshall told investors that these checks were interest payments from the New York mergers and acquisitions firm. However, this was not true. Some of Coggeshall's payments to investors came from the accounts of BOTR, the company which he owned, and some payments were made using funds Coggeshall had obtained from Toensing.

37. Coggeshall used some of the money he obtained from investors, along with money obtained from Toensing, to pay personal expenses. For example, these disbursements included over $136,000 in payments to Coggeshall himself (including cash withdrawals), at least $18,000 in debit card purchases at grocery, convenience, and drug stores, and approximately $9,000 to pay the rent for his apartment.

E.   Coggeshall's Efforts to Conceal His Fraud

38. Coggeshall never disclosed to investors that he had used their funds for trading and incurred significant losses, that he used any portion of their investment funds for his own benefit, or that he used funds obtained from Toensing in making their "interest" payments.

39. Coggeshall repeatedly dodged and evaded investors' requests for information about all of the following: their investments, BOTR's operations, the company's location and the name of its CEO, BOTR's contact information, the location where investor funds were being held, the person or entity who was insuring investor funds, and the details of any mergers and acquisitions by BOTR following their investment.

40. Coggeshall never told his investors that, as of January 2018, he was no longer associated with a brokerage firm.

41. By April 2019, when the investors' own funds, and the funds readily available from Toensing, had been exhausted, Coggeshall simply stopped communicating with his investors.

COMPLAINT AND JURY DEMAND - 7

# FIRST CLAIM FOR RELIEF

## Fraud in Connection with the Purchase or Sale of Securities

## Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)

42. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

43. As alleged above, Coggeshall engaged in a course of conduct which defrauded several elderly investors. He solicited investor funds with promises of investments in a mergers and acquisitions firm that would generate periodic payments at fixed interest rates. Instead, he used those funds to engage in unprofitable securities trading in an account under his sole control. Coggeshall also misappropriated investor funds for his own personal use. Coggeshall took steps to conceal his misappropriation, including by providing investors with Documents of receipt and making interest payments using funds from another source, to lend an appearance of legitimacy to his fraud.

44. By engaging in the conduct described above, Coggeshall, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

45. Coggeshall knew, or was reckless in not knowing, that he employed devices, schemes or artifices to defraud and engaged in acts, practices, or courses of business that operated as a fraud upon other persons by the conduct described in detail above.

46. By engaging in the conduct described above, Coggeshall violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)].

COMPLAINT AND JURY DEMAND - 8

# SECOND CLAIM FOR RELIEF

## Violations of Sections 17(a)(1) and (3) of the Securities Act

47. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

48. As alleged above, Coggeshall engaged in a course of conduct which defrauded several elderly investors. He solicited investor funds with promises of investments in a mergers and acquisitions firm that would generate periodic payments at fixed interest rates. Instead, he used those funds to engage in unprofitable securities trading in an account under his sole control. Coggeshall also misappropriated investor funds for his own personal use. Coggeshall took steps to conceal his misappropriation, including by providing investors with Documents of receipt and making interest payments using funds from another source, to lend an appearance of legitimacy to his fraud.

49. By engaging in the conduct described above, Coggeshall directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, employed devices, schemes, or artifices to defraud; and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

50. Coggeshall knew, or was reckless or negligent in not knowing, that he employed devices, schemes or artifices to defraud and engaged in acts, practices, or courses of business that operated as a fraud upon other persons by the conduct described in detail above.

51. By engaging in the conduct described above, Coggeshall violated Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), and 77q(a)(3)].

COMPLAINT AND JURY DEMAND - 9

# THIRD CLAIM FOR RELIEF

## Fraud in the Connection with the Purchase or Sale of Securities
## Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)

52. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

53. As alleged above, Coggeshall acted with *scienter* and made multiple material misstatements to induce investors to use their retirement funds to invest in a mergers and acquisitions firm located in New York. However, contrary to Coggeshall's representations no such firm existed and investor funds were deposited in accounts of a business which Coggeshall established and controlled. Investor funds were not placed in a trust or escrow account, only bank and brokerage accounts for which Coggeshall was the only authorized user. There were no mergers and acquisitions funded by the investors, only unprofitable securities trading by Coggeshall himself. And there was no escrow or insurance policy protecting investor funds; Coggeshall lost most of the investors' money trading and spent most of the remaining funds on himself. Any reasonable investor would find that Coggeshall's misrepresentations and omissions about the use of investor funds were material.

54. By engaging in the conduct described above, Coggeshall directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. Coggeshall knew, or was reckless in not knowing, that he made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

COMPLAINT AND JURY DEMAND - 10

56. By engaging in the conduct described above, Coggeshall violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## FOURTH CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

57. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

58. As alleged above, Coggeshall acted with scienter and made multiple material misstatements to induce investors to use their retirement funds to invest in a mergers and acquisitions firm located in New York. However, contrary to Coggeshall's representations no such firm existed and investor funds were deposited in accounts of a business which Coggeshall established and controlled. Investor funds were not placed in a trust or escrow account, only bank and brokerage accounts for which Coggeshall was the only authorized user. There were no mergers and acquisitions funded by the investors, only unprofitable securities trading by Coggeshall himself. And there was no escrow or insurance policy protecting investor funds; Coggeshall lost most of the investors' money trading and spent most of the remaining funds on himself. Any reasonable investor would find that Coggeshall's misrepresentations and omissions about the use of investor funds were material.

59. By engaging in the conduct described above, Coggeshall, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Coggeshall knew, or was reckless or negligent in not knowing, that he obtained money or property by means of untrue statements of a material fact or by

COMPLAINT AND JURY DEMAND - 11

omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61. By engaging in the conduct described above, Coggeshall violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

62. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

63. Relief Defendant BOTR received improper and illegal transfers of investor money from Coggeshall, even though it had no right to receive any investor funds.

64. By reason of the foregoing, Relief Defendant BOTR has been unjustly enriched, and may be compelled to return any investor funds it still holds, and also may be found liable for the transfers it received.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

I.

Issue findings of fact and conclusions of law that Defendant committed the violations alleged herein.

II.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining the Defendant, and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

COMPLAINT AND JURY DEMAND - 12

III.

Order Defendant and Relief Defendant to disgorge their ill-gotten gains received as a result of the violations alleged in this Complaint, with prejudgment interest.

IV.

Order Defendant to pay an appropriate civil penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may determine to be just and necessary.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC hereby requests a trial by jury.

Dated: November 22, 2019.             /s/Robert M. Moye
                                       Robert M. Moye
                                       Attorney for Plaintiff
                                       Securities and Exchange Commission

COMPLAINT AND JURY DEMAND - 13